| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Micah Wallace<br>Special Agent: Jeff Sokolowski | Telephone: (313) 226-9100<br>Telephone: (313) 965-2323 | |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
   v.
Antoine Ward

Case No. Case: 2:24−mj−30525
Assigned To : Unassigned
Assign. Date : 12/10/2024
Description: CMP USA V. WARD (DJ)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 25, 2024__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951 | Interference of commerce by robbery |
| 18 U.S.C. § 924 (c) | Possession of a firearm in furtherance of a crime of violence |

This criminal complaint is based on these facts:
see attached affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Jeff Sokolowski, Special Agent (F.B.I.)
_Printed name and title_

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: December 10, 2024

_Judge's signature_

City and state: Detroit, Michigan    Hon. Kimberly G. Altman, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jeffrey Sokolowski, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION & AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation and have been so employed since March of 2009. My duties involve the investigation of violent crimes, including crimes related to firearms violations such as armed robberies affecting interstate commerce. I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, including the use of cellular devices to commit those offenses.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.

3. I have not set forth every fact resulting from the investigation; rather, I have set forth a summary of the investigation to date to establish that Antoine Lashawn WARD committed violations of 18 U.S.C. § 1951(a), interference with commerce by robbery, and 18 U.S.C. § 924(c), possession of a firearm in furtherance of a crime of violence.

## PROBABLE CAUSE

4. On October 25, 2024, around 4:16 PM, a man robbed a Brink's Armored Courier ("Brink's") driver and a Brink's armored truck at gunpoint outside the Home Depot at 20300 Kelly Road, Harper Woods, Michigan.

5. The victim/driver said that he was collecting a monetary deposit from the Home Depot. As he exited the Home Depot carrying the deposit, a man came up to him, brandished a revolver, and demanded the money the victim was carrying. The robber was wearing a black Brink's jacket, a black baseball style hat, sunglasses, black pants, dark tan/brown shoes, and a black face covering. The robber also took the victim's FN 509 pistol which he was carrying in a holster.

6. The robber then ordered the victim to get into the truck, followed the victim, and shut the side door. The robber ordered the victim to handcuff himself to the steering wheel of the truck, and the victim complied.

7. In the next few minutes, the robber opened the truck's vault, filled a cash courier bag with money, and exited the Brink's truck with the cash and the victim's pistol.

8. In total, the robber took approximately $360,000 from the vault of the Brink's truck along with the monetary deposit from Home Depot (just under $30,000).

9. The robber never asked the victim how to open or access the vault of the Brink's truck. Based on my training, experience, and conversations with Brink's security staff, because the robber knew how to open the truck's vault without help, he is likely a current or former Brink's employee. Moreover, Brink's staff, including the drivers, knew that this location was particularly vulnerable to theft because of the blind exit from the Home Depot.

10. Investigators reviewed Home Depot's surveillance video, which showed the following:

    a. Around 4:13 pm, five minutes after the victim parked the Brink's truck, the robber appeared and walked towards the truck. While he was approaching, the victim exited the truck and entered the Home Depot.

    b. While the victim was in the Home Depot, the robber walked toward the entrance the victim had just used. The robber placed himself at the hinge area of the door, out of sight to someone exiting the Home Depot. The robber stayed at this location until the victim exited the Home Depot around 4:16 pm.

    c. As the victim exited the Home Depot, the robber pulled out a revolver and pointed it at the victim. The victim initially tried to jump out of the way but quickly placed his hands in the air. The robber then took

3

the victim's pistol and followed the victim inside the truck as the victim described.

  d. After some time inside the truck, the robber exited carrying a bag and the victim's pistol.

  e. As the robber left the area, he appeared to drop the victim's pistol on the ground.

  f. The robber then fled towards Kelly Road and headed south bound on Kelly Road, where he was last seen on the Home Depot security footage.

11. Investigators were able to locate other surveillance cameras in the surrounding neighborhood. Through reviewing those videos, investigators first spotted the robber around 12:30 PM walking on the sidewalk near Cushing and 8 Mile Road and then appearing to turn southbound on Kelly. The robber arrived at the Home Depot around 1:00 pm and stayed in the area until the time of the robbery at 4:16 pm.

12. Investigators were also able to locate where the robber fled after the robbery. He is last seen on video near Edmore Drive in between Cushing and Kelly Road. Officers canvassed the area and located the robber's clothing discarded on the ground behind a garage on Edmore Drive (across the street from the Home Depot). The clothing included a Brink's jacket and patch along with sunglasses,

consistent with the clothing the robber was wearing when he committed the robbery.

13. In a neighboring yard, officers found two deposit bags of cash from Home Depot along with a cash courier bag and two crumpled up work gloves matching the ones worn by the robber. The bag contained $29,305.81, the same amount taken from Home Depot.

14. Investigators conducted a second video canvass of the area and found an individual matching the description of the robber on the morning of the robbery walking west on Eight Mile Road. Investigators also reviewed Detroit Police Department's Project Green Light footage which showed the robber walking west on Eight Mile Road, wearing the same clothing.

15. Investigators also obtained videos from the Detroit Department of Transportation which showed the subject, wearing all the same clothing, get onto a bus on Eight Mile West, Detroit, Michigan at approximately 11:20 am.

16. On November 25, 2024, I reviewed a list of current and former Brink's employees that matched the description of the robber which was given to me by Brink's security. Cross referencing the list with a law enforcement database, I discovered that a Brink's former employee—Antoine Lashawn WARD—has a listed residence address of XXXXX Delaware Avenue, Redford, Michigan, which

is located just south of Eight Mile Road and only about one mile west of the robber's last seen location on the collected surveillance videos.

17. On November 26, 2024, Brink's provided XXX-XXX-5349 as a phone number WARD would use to communicate with Brink's and confirmed WARD's address.

18. T-Mobile records confirmed the IMSI number of WARD's phone was connected to the cell phone number provided by Brink's. T-Mobile's account details show that the phone is subscribed to Antoine WARD with an address of XXXXX Delaware Avenue, Redford, Michigan 48240.

19. WARD's driver's license image is a close match to the description (black male, short, stocky build, beard) the victim provided of the robber.

20. Investigators obtained search warrants for WARD's historical cell site, ping, and timing advanced data. An FBI Special Agent who is a certified CAST (Cellular Analysis Survey Team) member and is an expert in historical cell site analysis, reviewed the search warrant returns, and concluded the following:

    a. On October 25, 2024, around 7:40 AM, WARD's phone was at the area of his residence. The phone then moves towards the area of the Home Depot for several hours leading up to the robbery, remains there through the robbery, and is in the area for approximately one hour after the robbery.

6

  b. Specifically, WARD's phone left his residence and moved west to east using cell towers near 8 Mile Road until 11:58 AM. This movement is consistent with the video footage of the suspect from the video canvass showing 1) the robber travelling on foot west to east on 8 Mile Road, 2) boarding a Detroit Department of Transportation bus at 11:20 am, and 3) continuing to head east on 8 Mile Road toward the Home Depot in Harper Woods, which is near 8 Mile Road and Kelly Road. This would also mean that WARD left around 7:40 AM to walk approximately 3 miles to then catch a bus to the Home Depot, arriving around 12:30 PM.

  c. Next, WARD's phone used several cell towers around the Home Depot for three and a half hours beginning at approximately 1:27 PM until approximately 4:58 PM. Then the phone moved west from the Home Depot and used a cell tower in the area of 8 Mile Road and Shakespeare Street in Eastpointe near a bus stop at approximately 5:20 pm. Finally, the phone traveled west to the area of WARD's residence and used a cell tower there at approximately 7:39 pm.

 21. WARD worked for Brink's for six years and would have worked on a variety of routes including the route where the robbery occurred.

7

22.     WARD, as a former Brink's employee, would also know the pattern of the cash drop-offs and pickups, the security procedures used by the victim, the security protections of the vault, and the vulnerability of that particular Home Depot.

23.     On December 9, 2024, investigators executed a search warrant at WARD's residence. They found multiple firearms including four handguns. Most notably, they found a SR LCR .38 caliber revolver registered to WARD in the pocket of a black leather jacket. On December 9, 2024, investigators showed pictures of all four handguns to the victim. When shown a picture of the .38 caliber revolver (the third gun shown), the victim immediately stated "this one for sure" and pointed out specifics of the revolver that matched his memory of the robber's gun.



Photo of revolver registered to WARD.

24. Investigators also located black pants with paint stains consistent with surveillance camera footage.



Screenshot from surveillance camera (left) showing pants with paint stains matching pants found in WARD's home (right).

25. Finally, investigators found identical shoes to those worn by the robber. The shoes had paint stains consistent with the surveillance video and one of the shoes was missing its laces which is also visible in the video.

9



WARD's shoes (left) showing paint stains and WARD's left shoe is missing its laces consistent with the surveillance footage (right).

26. Based on the information above, there is probable cause to believe that on October 25, 2024, Antoine Lashawn WARD committed violations of 18 U.S.C. § 1951(a), interference with commerce by robbery, and 18 U.S.C. § 924(c)(1)(A), use of a firearm during and in relation to a crime of violence, by robbing a Brink's armored truck and its driver at gunpoint.

Respectfully submitted,

*[signature]*

Jeffrey Sokolowski, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my
presence and/or by reliable electronic means

*[signature]*

Honorable Kimberly G. Altman
United States Magistrate Judge

Dated: December 10, 2024

11